*In re* HOOPER'S ESTATE.

BERRY BROTHERS, LTD., *v.* ESTATE OF ALFRED HOOPER.

1. WORK, LABOR AND SERVICES—SALARY—IMPLIED CONTRACT.
   Evidence that the deceased manager of a partnership association, limited, drew $5,000 yearly from the association, and, to his knowledge, interest on overdrafts was charged to him regularly, *held*, to negative any contract to pay compensation for services in excess of the salary.

2. SAME—COPARTNERSHIP ASSOCIATIONS, LIMITED—AGENCY.
   The expression of intention by one of the managers and officers of such association to readjust the compensation of its manager, or to dispose of the balance charged to him by distributing at some future date a surplus of the association, was insufficient to bind the association to pay additional salary or cancel overdrafts of its manager, even if one of the five managers had authority to make such a contract.

Error to Wayne; Murphy, J. Submitted October 5, 1913. (Docket No. 48.) Decided March 26, 1914.

Berry Brothers, Limited, a copartnership association, presented a claim against the estate of Alfred Hooper, deceased, which was disallowed by commissioners on claims. On appeal to the circuit court the claim was allowed by direction of the trial judge. Defendant brings error. Affirmed.

*Campbell, Bulkley & Ledyard (Henry M. Campbell* and *Henry Ledyard*, of counsel), for appellant.

*James O. Murfin* and *William L. Carpenter*, for appellee.

Prior to the year 1893, Joseph H. Berry and Thomas Berry were engaged as partners, under the firm name of Berry Bros., in the manufacture and sale of varnishes and kindred products. Alfred Hooper entered the employ of this copartnership at an early age. He was a relative of the Berrys, and, starting as a youth at a low salary in the year 1872, he advanced rapidly in the confidence of his employers and in usefulness to the concern, until in 1892 he was receiving a salary of $5,000. During this 20-year period, Hooper was charged in the books of Berry Bros. with his withdrawals and credited with the amount of his salary at the end of the year. A balance was struck and the debit carried forward into the next year's account, and interest was charged thereon. This debit balance of Hooper's account gradually grew, until in 1893 it had reached the sum of approximately $50,000. In that year the partnership was changed into a partnership association limited, with a capital of $1,000,000. The stock was all owned by the Berry brothers except certain qualifying shares. At the time of organization or shortly thereafter, Hooper's debit balance was wiped out, and he was presented with capital stock in the new association in the sum of $100,000.

The board of managers consisted of five persons,

of whom Hooper was one. Joseph H. Berry was the chairman of the board and was the ruling spirit in the concern up to the time of his death, which occurred May 22, 1907. Mr. Hooper died in December, 1909, and Mr. W. G. Smith, the treasurer of the association, died in 1911. During the 16 years which elapsed between the formation of the association and the death of Mr. Hooper, he was very active in the affairs of the concern, and during the last two years he was its general manager. Within this time there was a period of about 18 months during which Hooper became addicted to the excessive use of alcoholic stimulants and wholly absented himself from the concern and did no business in connection therewith. After medical treatment, however, he again became normal and resumed, and for a number of years continued to perform, the onerous labors incident to his position.

The record does not disclose that the salaries of the officers of the association were ever fixed by formal resolution, but, from the first, each of the active managers was credited each year with the sum of $5,000, which was charged to expense. Hooper, as well as both of the Berry brothers, continued to draw from the concern cash as their necessities required, and at the end of each year, after deducting the $5,000 and an annual 5 per cent. dividend upon stock, the balance was carried forward into the account for the following year. Interest was charged upon these balances at the rate of 6 per cent. The account was open to the inspection of Mr. Hooper, and was inspected by him from time to time. In the year 1905 Mr. Hooper's debit balance had grown to a sum in excess of $90,000. He then requested and secured a rebate on account of interest. The account was restated in that year and interest charged for the entire period from 1893 at the rate of 5 per cent. instead

of 6 per cent. The sum credited to Hooper's account as a result of this change was $6,670.08.

After the death of Joseph H. Berry, Mr. Hooper was made general manager of the concern at an annual salary of $15,000. At the time of his death, his debit balance upon the books of the association limited had been reduced to something less than $40,000. A claim was filed against his estate for this sum by the association. This claim was resisted on behalf of the estate, upon the ground that during the years from 1893 to 1907 Hooper's services were worth, to the association limited, at least $25,000 per year. That the sums he drew each year in excess of $5,000 and dividends upon his stock were paid to him by the concern on account of salary, and that, instead of Berry Bros. having a valid claim against the estate of Hooper, that estate was entitled to receive from Berry Bros. the sum of $300,000.

Upon the trial in the circuit court, claimant proved the accuracy of its account against Hooper and rested. The balance, with interest, amounted to $42,188.20.

On behalf of the defendant estate, the character and value of Hooper's services were shown. To support the claim that the $5,000 paid Hooper annually was not in full compensation for salary, the estate offered in evidence three letters written by W. G. Smith, the treasurer of Berry Bros., to Hooper. These letters were, in part, admitted by the learned trial judge. They follow:

"DETROIT, April 28th, 1905.
"MR. ALFRED HOOPER,
"Detroit.
"*Dear Sir:*
"The books of this association show that you are the owner of $100,000 of the capital stock of the association.

"The books show a surplus as of November 30th, 1904, of $2,657,390.00. In this surplus there are some items which have been carried on the books for

some years and upon which the full value may not be realized.

"Yours very truly,
[Signed] "W. G. SMITH, Treas."

"DETROIT, August 24th, 1907.
"MR. ALFRED HOOPER,
        "Detroit, Mich.
"*My Dear Sir:*
"Referring to my letter to you of April 28th, 1905, I wish to state that the items referred to in that letter, upon which Berry Bros., Limited, did not expect to realize full value, were particularly those accounts of Leonard Laurence & Co., and your own account.

"These matters were often a matter of discussion between the late Joseph H. Berry and myself and it was well understood that they were subject to adjustment.

"Yours very truly,
[Signed] "W. G. SMITH, Treas."

"DETROIT, November 19, 1907.
"MR. ALFRED HOOPER,
"*My Dear Sir:*
"Referring to my letter to you of April 28th, 1905, relative to the items charged to your account upon the books of Berry Bros., Limited, I am entirely familiar with the account from the inception of it until Mr. Berry's death.

"Mr. Berry and I often talked of this account as well as other accounts which were on the books of Berry Bros., Limited, and it was distinctly understood that they were matters for future adjustment.

"I may say that the advances made to you from time to time were done with the full knowledge of Mr. Joseph H. Berry and were considered and treated as on account of compensation. You know as well as I do how kindly Mr. Berry felt towards his associates who were with him from day to day during the larger portion of his business career. It was not in Mr. Berry's nature to say, 'Well done, good and faithful servant;' but you know that he took other means of showing his appreciation, but he had his own way and ideas as to the method of compensating them. I know he expected, and I think he got the very best efforts from his associates and I know that he felt

very kindly towards them. Unfortunately for you, your matters pertained entirely to the business of Berry Bros., Limited, and they were left open to be adjusted when Mr. Berry got around to arranging the disposition of the surplus of Berry Bros., Limited, which was a matter he and I often discussed to put off from time to time as he was very much disposed to do with matters of that kind. While we carried the balance of your account as an asset of Berry Bros., Limited, in making out our financial statement, it was not so considered by Mr. Berry and myself as I have already said, it being understood that it would be disposed of in the large surplus which had accumulated.

"Yours very truly,

[Signed] "W. G. SMITH, Treas."

The position taken by the defendant estate is fully disclosed by the following request to charge:

"(1) I charge you that the testimony is uncontradicted that Mr. Hooper was serving Berry Bros. in his lifetime for no fixed salary; that the overdrafts in his account, which constitute the basis for the claim of the company in this case, were not considered by the company as debts owing from Mr. Hooper, but were considered by it as moneys drawn by Mr. Hooper, with the consent of the company, on account of his compensation. I charge you, therefore, that such overdrafts cannot be made the basis of a claim against Mr. Hooper's estate, and that therefore you will deny the claim of Berry Bros., as presented, in its entirety.

"(2) I further charge you that the books of Berry Bros. show that the sum of $84,313.06 was credited to Mr. Hooper's account June 16, 1908, as an extra dividend upon the stock of Berry Bros., Limited, and that the other stockholders were given their proportional share of said dividend; that, under the testimony in this case, said sum of $84,313.06 cannot be applied as against Mr. Hooper's so-called overdrafts, but is, and has been from the date when the dividend was declared, wrongfully withheld from him and from his estate; that in consequence you will find in favor of the estate of Alfred Hooper in the sum of $104,021.27, which consists of said extra dividend of $84,313.06

and interest thereon at the rate of 5 per cent. from the date of its declaration, June 16, 1908, to date, which said interest amounts to $19,708.21.

"(3) I further charge you that, in addition to the amount so found in favor of the estate of Alfred Hooper, you shall add to such amount such sum as you think, under the evidence presented, will compensate his estate for his services rendered to Berry Bros., Limited, from 1893 until the date of his death, December 28, 1909; that in estimating the amount of such additional compensation, you shall take into consideration the amounts paid to Mr. Stridiron during the same period, and the fact that Mr. Stridiron was a subordinate under Mr. Hooper; also the fact that, after Mr. Berry's death, Mr. Hooper's salary was fixed at the sum of $15,000 a year by the board of managers. You shall also take into consideration such expert testimony as has been presented and such other facts and circumstances as have been presented. as evidence on the questions under consideration. In considering this question of additional compensation, if you should find that Mr. Hooper was entitled to additional compensation, you may not fix, under the testimony, any figure less than the amount of his claimed overdrafts during the period in question, as the admission of the company, as set forth in the letter of Mr. W. G. Smith, the treasurer, is that these overdrafts were to be considered as on account of compensation, and not as an asset of Berry Bros., Limited, or a claim against Alfred Hooper.

"(4) I charge you that, under the law, compound interest (that is, interest upon interest) cannot be computed, in the absence of an express promise to pay such interest on interest, after the interest on the obligation has become due; that there is no evidence in this case of any agreement on the part of Mr. Hooper to pay compound interest; that therefore, whatever sums you find are due to either of the parties in this case, the same should be computed on the basis of straight interest at 5 per cent. per year to date."

These were all refused, and the court directed a verdict in favor of claimant for the full amount claimed.

BROOKE, J. *(after stating the facts)*. The learned trial judge denied the claims of the defendant estate upon the following grounds:

(1) The statute (section 6083, 2 Comp. Laws, 2 How. Stat. [2d Ed.] § 5429), under which claimant is organized, provides:

"That no debt shall be contracted nor liability incurred for said association except by one or more of said managers, and no liability for an amount exceeding $500.00, except against the person incurring it, shall bind the said association, unless reduced to writing and signed by at least two managers."

It was conceded that no written contract existed between Berry Bros. and Alfred Hooper.

(2) That, while a corporate officer may recover for services outside the scope of his duties as such officer, he can do so only when he can show that such services were rendered "under circumstances indicating that both the corporation and the officer in question understood that remuneration was to be given for such extraneous service," and that his corporate duties did not include the work done. Under the rule adopted by the association defining the authority of its board of managers, the evidence shows that the services rendered by Hooper were within the scope of his duties as a manager of the association.

While the second position may be tenable (which we do not determine), we are of opinion that decision may be more safely predicated upon another ground. It is strongly urged on behalf of claimant that the "Smith" letters were inadmissible as evidence, and many authorities are cited upon the proposition. For the purposes of this case, however, we will assume their competency.

The record conclusively shows, indeed it is admitted by counsel for the defendant estate, that the $5,000 paid Hooper each year was as and for salary. We think it is equally clear that that sum was considered

both by Hooper and the association as in full of salary. The fact that his overdrafts were, at the end of each year, carried forward to his account in the next year, and interest charged thereon with his knowledge and consent, and that this course was followed for some 15 years without protest upon his part, conclusively established the fact that the sum named was his agreed salary during the period in question. This, of course, negatives the assumption that there could have been any agreement or understanding between him and the association that he was entitled to demand further compensation for his services.

Now, what do the letters show? The first and second may be dismissed as unimportant. The third, giving to its contents the greatest probative force, merely indicates that Joseph H. Berry (one of five managers of a partnership association limited) had often told Mr. Smith that it was his intention, at some time in the future, to readjust the matter of Hooper's compensation; that the debit balance would be "disposed of in (by a distribution of) the large surplus which had accumulated." Again, assuming that Joseph H. Berry had the sole power to accomplish this end, which, under the law governing the concern, he did not possess, his statements, as recorded in the "Smith" letters, import no legal liability. They indicate, at most, an intention upon his part to, at some indefinite time in the future, make a new contract with Hooper covering the question of compensation, or perhaps to forgive and wipe out the overdraft.

This promise of a new contract or a future gratuity carried with it no legal obligation and was never performed.

The record shows that on June 16, 1908, there was a partial distribution of the surplus of the association. Hooper's share of this surplus amounted to $84,313.06. This may have been the very method in-

tended by Joseph H. Berry for the readjustment of Hooper's account. We are satisfied that the verdict was properly directed.

The judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.